THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MELVIN EVANS, Defendant-Appellant.

First District (2nd Division)    No. 78-1054

Opinion filed March 2, 1982.

James J. Doherty, Public Defender, of Chicago (Timothy P. O'Neill, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Thomas G. Dicianni, Assistant State's Attorneys, of counsel), for the People.

· JUSTICE PERLIN delivered the opinion of the court:
After a jury trial defendant Melvin Evans (defendant) was convicted of one count of aggravated battery. (Ill. Rev. Stat. 1977, ch. 38, par. 12—4(b)(1).) He was sentenced to serve an indeterminate sentence of two to six years in the Illinois Department of Corrections. He appeals from that conviction raising the following issues for our review: (1) whether the evidence presented at trial proved beyond a reasonable doubt that defendant did not act in self-defense; (2) whether it was error for the trial court to deny defendant an opportunity to testify to his knowledge of the victim's conviction for murder; (3) whether the trial court erred by denying defense counsel access to police reports concerning the victim's prior arrests; (4) whether the trial court erred by admitting into evidence a photograph of a rifle that was not used in the commission of the crime. For the reasons hereinafter set forth we affirm defendant's conviction.

On December 4, 1975, the victim, Jerome Rice (Rice) sold defendant a bathroom sink for which he was to be paid $12 at some later date. On the following day, December 5, 1975, Rice was driving on South May Street when he saw defendant on the sidewalk talking with three men. Rice stopped the car and approached him demanding his $12. Defendant left the group and went into his apartment which was on the second floor of the building at 6134 South May. He opened a window and shot Rice in the face with a shotgun. The testimony adduced at trial regarding the details of the confrontation between Rice and defendant is in conflict.

Rice testified that when he approached defendant on December 5 and asked for the $12, defendant told him to wait a few minutes. After waiting a short time, Rice again approached defendant and asked for either the $12 or the return of his sink. Defendant told one of the men to return the sink to Rice. According to Rice, defendant went into his house and moments later shouted to Rice from a second story window. Rice testified that the shouts were unintelligible and that as he turned to face the window, he saw the shotgun and was shot. He testified that he was unarmed at the time and that he held his hands at his side as he turned to face the window. On cross-examination Rice admitted that he had been convicted of burglary on November 21, 1968.

Willie Sparks substantially corroborated Rice's testimony. Sparks testified that he observed no gun on Rice's person and that Rice stood with his hands at his sides while defendant shouted at him from the second story window to "[g]et away from my house."

After Sparks heard the shot and saw Rice collapse, he ran north on

May Street to the corner where he encountered Officer William Burmeister and related the incident to him. Officer Burmeister drove to 6132 South May Street where he saw Rice lying on the sidewalk. Burmeister radioed for assistance and searched the area. He found no weapons on or near the victim.

Defendant testified that Rice approached him on December 5, 1975, demanding $12 for the sink. Defendant asked Rice to wait while he finished talking with the other men present. Rice again demanded the money but defendant replied that all he had on him was a $20 bill and that he had to go inside to get change from his wife.

When defendant entered his apartment, he saw that his wife was not there so he opened the front window and told Rice "to go ahead home and I'll see that you get your money later on this evening." Defendant testified that Rice then demanded that he be paid immediately and that Rice made threatening gestures with his hand as if he was withdrawing a gun from his pocket. Defendant ordered Rice to leave but Rice warned defendant not to come down unless he had the money. Defendant stated that as Rice began to take his hand out of his pocket, defendant fired the shotgun aiming it over Rice's head. The blast, however, hit Rice. Defendant testified that he knew of Rice's reputation for violence and that Rice was known to carry a gun.

Clyde Johnson, defendant's cousin, was one of the men talking with defendant when Rice approached them. His testimony corroborated defendant's version of the verbal exchange between defendant and Rice. Johnson stated that when defendant was in the vestibule of his building, Rice shouted to defendant that "if he [defendant] had a gun in his apartment to bring it on back down because he [Rice] God damn shore [sic] had his." Johnson testified that Rice made threatening gestures with his hands in his pockets and that Rice was known to carry a gun and a straight razor.

Defendant was convicted of aggravated battery and was sentenced to two to six years in the Illinois Department of Corrections. Defendant's oral motion for a new trial was denied.

# I

Defendant first contends that the evidence presented at trial failed to prove beyond a reasonable doubt that he did not act in self-defense. Defendant argues that his actions were justified because his apprehension of imminent harm was reasonable.

The Illinois Criminal Code provides that an individual:

"* * * is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes

that such force is necessary to prevent imminent death or great bodily harm to himself or another * * *." Ill. Rev. Stat. 1977, ch. 38, par. 7—1.

Self-defense is an affirmative defense (Ill. Rev. Stat. 1977, ch. 38, par. 6—4), and once it is raised by defendant's presentation of some evidence, the State has the burden of proving the defendant's guilt beyond a reasonable doubt as to that issue. (Ill. Rev. Stat. 1977, ch. 38, par. 3—2; *People v. Woods* (1980), 81 Ill. 2d 537, 410 N.E.2d 866; *People v. Williams* (1974), 57 Ill. 2d 239, 311 N.E.2d 681.) A court of review may review all of the evidence to determine whether it shows the guilt of the defendant beyond a reasonable doubt, and where the record raises "a grave and substantial doubt" of guilt, the judgment will be reversed. (*People v. Lewellen* (1969), 43 Ill. 2d 74, 250 N.E.2d 651; *People v. Willson* (1948), 401 Ill. 68, 81 N.E.2d 485.) Whether an otherwise criminal act is justified under the law of self-defense depends on all of the surrounding facts and circumstances. *People v. Bingham* (1979), 75 Ill. App. 3d 418, 394 N.E.2d 430.

In the instant case there was some evidence presented that supported defendant's contention that his fear of imminent bodily harm was reasonable. He testified that he knew of Rice's reputation for violence. He stated that Rice threatened him and made menacing gestures as if to withdraw a gun from his pocket. Defendant's testimony was corroborated by his cousin Clyde Johnson. Johnson added that Rice threatened defendant by stating that he (Rice) had a gun on his person.

There was also ample evidence presented, however, that supported the State's contention that defendant's apprehension was unreasonable. Rice testified that he was unarmed, that he did not threaten defendant in any manner, and that he held his hands at his side when he was shot. Sparks corroborated Rice's testimony. Officer Burmeister testified that he searched the area after the shooting and that he did not find any weapon near Rice nor on his person.

■■ The determination of the credibility of the witnesses and the weight to be given their testimony are matters properly within the special purview of the trial court, and where the evidence is merely conflicting a court of review will not substitute its judgment for that of the trier of fact. (*People v. Montgomery* (1977), 51 Ill. App. 3d 324, 366 N.E.2d 623; *People v. Baer* (1976), 35 Ill. App. 3d 391, 342 N.E.2d 177.) The evidence adduced at trial was conflicting. The jury was not compelled to believe defendant's exculpatory statements. In our judgment the State presented evidence which if believed by the jury proved beyond a reasonable doubt that defendant's use of force was unreasonable under the circumstances.

## II

Defendant next contends that the trial court erred when it refused to permit him to testify to his knowledge of Rice's conviction for murder.[1]

During defendant's opening statement defense counsel began to inform the jury that defendant's belief that he was in imminent danger was based, in part, upon his knowledge that Rice was convicted of murder in 1946. The State objected on the ground that the conviction was too old. The State argued that since Rice was discharged from parole in 1966, more than 10 years prior to defendant's offer of proof, the rule of *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, required that it be excluded. Defendant argued that *Montgomery* did not apply because *Montgomery* involved the propriety of the admission of prior convictions for purposes of impeachment. In the instant case the defendant's knowledge of the victim's prior conviction was offered to show the reasonableness of defendant's apprehension of imminent harm. The trial court relied on *Montgomery* to exclude the evidence.

The State concedes that the trial court's reliance on *Montgomery* was error and that *Montgomery's* 10-year rule does not apply. In the instant case the defendant's knowledge of the victim's prior conviction was offered to show defendant's state of mind. The evidence was not offered to impeach a witness. In cases where self-defense is an issue, it is clearly permissible to bring out defendant's perception of danger, and specific facts known to defendant bearing on this perception are material and relevant to the jury's assessment of defendant's belief that the use of deadly force was justified. *People v. Moore* (1980), 89 Ill. App. 3d 202, 411 N.E.2d 579 (error to exclude defendant's knowledge of victim's prior conviction for attempt murder); *People v. Gall* (1979), 79 Ill. App. 3d 823, 398 N.E.2d 1118 (error to exclude defendant's knowledge of victim's prior conviction for manslaughter); *People v. Adams* (1979), 71 Ill. App. 3d 70, 388 N.E.2d 1326 (error to exclude defendant's knowledge of victim's reputation as a killer).

Having determined that the trial court's refusal to admit evidence of the victim's murder conviction was error, the next issue is whether it was harmless error.

■■ It is established that where the defendant has an opportunity to otherwise develop his defense, the erroneous exclusion of defendant's testi-

---

[1] The State contends that defendant waived his right to review of this and all of the remaining issues. The State argues that defendant's oral motion for a new trial was insufficient because the State objected to its oral nature. It is firmly established, however, that an oral motion is sufficient unless the State objects and requests that the grounds be specified. (*People v. Houck* (1977), 50 Ill. App. 3d 274, 365 N.E.2d 576; *People v. Biers* (1976), 41 Ill. App. 3d 576, 353 N.E.2d 389; *People v. Holmes* (1976), 41 Ill. App. 3d 585, 353 N.E.2d 396.) Here the State did not request that the grounds be specified; therefore, the oral motion is sufficient and all errors are preserved for appeal that were otherwise properly preserved.

mony as to his knowledge of the victim's prior convictions is harmless error. (*Moore*; *Gall*; *Adams*.) Upon a careful review of the record, it appears that the error complained of could not have influenced the jury's verdict. Defendant's defense was based upon his belief that Rice was reaching for a gun in his pocket. Defendant did testify that he knew of Rice's reputation for carrying a gun, and defendant's testimony was corroborated by his cousin who testified that Rice was known to carry a gun and a straight razor and that Rice had a reputation as being a violent man. By this testimony the jury was made aware of defendant's apprehension that the victim was armed. Defendant was not prevented from establishing his knowledge of the victim's background and developing the basis for his defense. Accordingly, the trial court's erroneous exclusion of defendant's knowledge of the victim's prior crimes was not substantially prejudicial.

### III

Defendant's third contention is that the trial court erred by denying defense counsel access to police reports concerning the victim's prior arrests. Defendant contends that evidence concerning the victim's prior arrests for unlawful use of a weapon was admissible to show that the victim's reputation for violence "had a valid basis in fact." The State maintains that defendant is not entitled to the reports because defendant's request for them was oral rather than written. Alternatively, the State argues that the defense was not entitled to them because they contained no admissible evidence.

At a pretrial conference on December 7, 1978, defense counsel requested that the court order the State to make available police reports concerning the victim's prior arrests. The State did not object to the oral nature of the request. Defense counsel argued that the victim's prior arrests for unlawful use of a weapon in 1968 and 1972 and his arrest for burglary in 1971 were admissible because they showed there was a factual basis for the victim's reputation for violence. The State argued that the information contained in the reports did not have to be disclosed because the information was being sought to prove the victim's reputation for violence for which purpose evidence of specific acts is inadmissible. The court denied defendant's request, but the record does not indicate the basis for the court's denial.

■■ Under Supreme Court Rule 412(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 412(a)), the State is compelled to disclose certain information to the accused "upon written motion of defense counsel." Although this particular request was made orally and may have been improper, the State's failure to object to its oral nature at trial constitutes a waiver of review of this issue.

■■ As noted above, in cases where self-defense is an issue, prior specific acts of violence or turbulence by the victim that are known to the defendant are relevant and material to the issue whether the defendant's apprehension of imminent harm is reasonable. It is also firmly established that a victim's prior specific acts are inadmissible to prove the victim's reputation for violence. (*People v. Gibson* (1944), 385 Ill. 371, 52 N.E.2d 1008; *People v. Allen* (1919), 289 Ill. 218, 124 N.E. 329; *People v. Dixon* (1973), 10 Ill. App. 3d 1038, 295 N.E.2d 556; E. Cleary and M. Graham, Handbook of Illinois Evidence §404.4 (3d ed. 1979).) Here the defendant sought police reports in order to elicit testimony from the arresting police officers which would have established the victim's reputation as one who often carried guns. Such specific acts of the victim would be inadmissible to prove such a reputation. Based on counsel's offer of proof and the absence of any indication in the record that the defendant knew of the victim's prior arrests, we cannot say that in this instance the trial court's denial of defendant's access to police reports covering the victim's prior arrests was error.

## IV

Defendant's final contention is that the trial court erred by admitting into evidence two photographs of a rifle that was not used in the commission of the crime.

The record indicates that one of the photographs depicted two long-barrelled guns enclosed in their cases. The other photograph depicted two long-barrelled guns on a table. Both of the guns depicted were seized from the defendant's apartment less than an hour after the shooting. Defendant argues that the admission of these photographs was prejudicial error which can only be corrected by a new trial.

■■ Although we question whether the admission of these photographs, which were not included in the record on appeal, was error, in our judgment we do not believe their admission was substantially prejudicial. Defendant relies heavily on *People v. Wade* (1977), 51 Ill. App. 3d 721, 366 N.E.2d 528. In *Wade* the murder weapon was never produced at trial, but the prosecutor elicited extensive testimony from a police officer regarding the gun found on defendant at the time of his arrest. There the State also stipulated that ballistics would show the weapon found on defendant was not the murder weapon. The instant case is distinguishable from *Wade* in that the weapon used in this offense, a shotgun, was introduced at trial and the testimony concerning the rifle consisted solely of stating that a rifle and shotgun were found in defendant's apartment less than one hour after the shooting. In our opinion the admission of these photographs could not have generated the "extreme prejudice" found in *Wade*.

For the reasons hereinabove stated we affirm the judgment of the circuit court of Cook County.

Affirmed.

STAMOS, P. J., and DOWNING, J., concur.